UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF FLORIDA

CASE NO.: 12-21578-CIV-HUCK/BANDSTRA

SILVIA CURTIS MAYORGA,

 Plaintiff,

v.

ALORICA, INC. d/b/a P.R.C. LLC
a/k/a Precision Response Corp.,

 Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS**

 Plaintiff, Silvia Curtis Mayorga, a female residing in Miami-Dade County, Florida, brings this action against Alorica, Inc. d/b/a P.R.C. LLC a/k/a Precision Response Corporation ("Alorica") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA"), and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10 *et seq*. ("FCRA"). Mayorga asserts claims of (1) unlawful sex and pregnancy discrimination, and (2) unlawful disability discrimination. This matter is presently before the Court on Alorica's Motion to Dismiss Counts Two and Three of the Plaintiff's Complaint (D.E. # 24), filed July 11, 2012. Alorica seeks dismissal of Counts II and III of the Complaint (D.E. # 1) on the basis that Mayorga has not stated a cause of action upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I. BACKGROUND**

 Mayorga began her employment with Alorica in 2010 as a customer service representative in the company's DirectTV bilingual retention and cancellation department in Miami-Dade County, Florida. In January 2011, Mayorga became pregnant. Having suffered complications during her previous pregnancies, Mayorga's obstetrician determined that her

pregnancy was high-risk, and that she needed to be closely monitored. Mayorga informed her direct supervisor, Luis Sola, as well as representatives from Alorica's human resources department, of her high-risk pregnancy.

In April 2011, Mayorga informed Sola that she needed to undergo ultrasound testing at weeks 14 and 18 of her pregnancy, and requested two days off from work to undergo the tests. Mayorga alleges that she offered to find another employee with whom she could swap shifts, and to work on her days off to make up for her absences. Sola initially denied Mayorga's request for an excused absence, as well as her proposal to swap shifts with another employee. Mayorga alleges that Sola stated, with respect to her undergoing testing for Down's syndrome: "What's the big deal? Why do you have to test your kid to find out if it's normal? Is it not normal?" Compl., ¶ 13. After this interaction, Mayorga's request to take time off to undergo ultrasound testing was granted by a human resources representative.

Mayorga's ultrasound tests revealed that her baby was, and would be, in a breech presentation throughout her entire pregnancy. Mayorga alleges that she suffered from "premature uterine contractions, irritation of the uterus, increased heart rate, severe morning sickness, severe pelvic bone pains, severe back pain, severe lower abdominal pain, extreme headaches, and other pregnancy-related conditions." *Id*. ¶ 15. The Complaint goes on to allege that Mayorga was admitted to the emergency room on three separate occasions for "severe complications relating to her pregnancy." *Id*. ¶ 16  As a result, Mayorga's doctor ordered her on bed rest for three weeks. Mayorga requested three weeks of unpaid leave from Sola, who, again, initially denied the request, stating: "I am not going to treat you special because you are pregnant." *Id*. ¶ 17. However, a human resources representative subsequently approved three weeks of unpaid leave.

Upon returning to work from her three-week leave-of-absence on June 27, 2011, Mayorga was informed by Alorica's Human Resources Department that she had been terminated. A representative told her: "Sorry. I cannot accommodate you. This is a company. We need you here. So, since you can't be here because you are pregnant, we cannot accommodate you. Re-apply after you have your baby." *Id*. ¶ 19.

As a consequence, Mayorga commenced the instant action on April 26, 2012 against Alorica. The Complaint alleges three counts: Sex and Pregnancy Discrimination in violation of Title VII (Count I), Disability/Perceived Disability Discrimination and Failure to Accommodate

2

in violation of the ADA (Count II), and Handicap Discrimination and Failure to Accommodate in violation of the FCRA (Count III).  Mayorga is seeking compensatory damages, lost wages, past and future wages, lost benefits, mental anguish, emotional distress, punitive damages, and attorneys' fees and costs.

In its Motion to Dismiss, Alorica argues that Count II of the Complaint should be dismissed because Mayorga was neither disabled nor regarded as disabled.  Alorica also argues that Count III should be dismissed because the FCRA does not recognize a cause of action for pregnancy discrimination.  For the reasons discussed below, the Court grants in part and denies in part Alorica's Motion to Dismiss as indicated.

## II.   LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of a complaint's factual allegations as true, construing them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Under Federal Rule of Civil Procedure 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2), (d)(1).  "[T]he statement need only give the defendant fair notice of what the . . . claim is and the ground upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal.  *Id.* (quoting *Twombly*, 550 U.S. at 555).

In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). "This is a stricter standard than the Supreme Court described in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which held that a complaint should not be dismissed for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Mukamal v. Bakes*, 378 F. App'x 890, 896 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 577). These precepts apply to all civil actions, regardless of the cause of action alleged. *Kivisto*, 413 F. App'x at 138.

### III. ANALYSIS

#### A. Disability/Perceived Disability Discrimination and Failure to Accommodate under the ADA

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that: (1) she is disabled under the ADA, (2) she is a qualified individual, and (3) she was unlawfully discriminated against because of her disability. *Knowles v. Sheriff*, 460 F. App'x 833, 835 (11th Cir. 2012); *Rossbach v. City of Miami*, 371 F.3d 1354, 1356-57 (11th Cir. 2004); *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). To satisfy the requirement that an individual is "disabled" within the meaning of the ADA, the individual must demonstrate: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). With respect to Count II, Mayorga is proceeding under both subsections (A) and (C), alleging in the alternative that

4

Alorica discriminated against her and refused to provide a reasonable accommodation based on her actual disability, and based on Alorica regarding her as disabled. As discussed below, the Complaint pleads sufficient allegations under both theories to survive the Motion to Dismiss.

1. *Actual Disability*

Mayorga first alleges that Alorica discriminated against her based on her actual disability—her pregnancy-related complications—in violation of the ADA. As noted above, to meet the ADA's definition of actual disability, Mayorga must demonstrate that she had "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The Equal Employment Opportunity Commission ("EEOC") has defined "physical impairment" as "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine."[1] 29 C.F.R. § 1630.2(h)(1). An individual faces a substantial limitation if the impairment "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* § 1630.2(j)(1)(ii). A "major life activity" is "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." *Id.* § 1630.2(i)(1)(i).

The ADA Amendments Act of 2008 ("ADAAA") was intended to make it easier for plaintiffs to prove they are disabled under the ADA. 29 C.F.R. Part 1630, App. § 1630.2(g) (citing 154 Cong. Rec. 13,766 (2008) (Joint Statement of Reps. Hoyer and Sensenbrenner on the origins of the ADA Restoration Act of 2008, H.R. 3195) ("the primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protections under the ADA")). The ADA, as amended by the ADAAA, provides that a disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms

---

[1] "Physiologic" is defined as "characteristic or conforming to the normal functioning state of the body or a tissue or organ." Dorland's Illustrated Medical Dictionary 1464 (2007). Thus, a physiological disorder is an abnormal functioning of the body, tissue or organ. *See Hernandez v. City of Hartford*, 959 F. Supp. 125, 130 (D. Conn. 1997).

5

of this chapter." 42 U.S.C. § 12102(4)(A); 29 C.F.R. § 1630.1(c)(4). The EEOC has further explained that the "substantially limits" requirement is to be "construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Additionally, the term "'major [life activity]' shall not be interpreted strictly to create a demanding standard for disability." *Id*. § 1630.2(i)(2). With these rules of construction in mind, the Court turns to whether the Complaint contains sufficient allegations to set forth a plausible claim for relief.

In the Complaint, Mayorga alleges that tests revealed that her baby "was, and would be, breached [sic] throughout the entire pregnancy," and that she suffered from "premature uterine contractions, irritation of the uterus, increased heart rate, severe morning sickness, severe pelvic bone pains, severe back pain, severe lower abdominal pain, extreme headaches and other pregnancy-related conditions." Compl., ¶ 15. Mayorga, however, notes that she was able to continue working despite these symptoms. *See id*. The Complaint goes on to allege that "[i]n June 2011, Mayorga was admitted to the emergency room at the hospital three times due to severe complications related to her pregnancy. As a result, her obstetrician ordered that Mayorga be placed on bed rest for three weeks." *Id*. ¶ 16.

Pregnancy, absent unusual circumstances, is not considered a disability under the ADA. *See, e.g., Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 553 (7th Cir. 2011) ("pregnancy, absent unusual circumstances, is not a physical impairment"); *Selkow v. 7-Eleven, Inc.*, No. 11-CV-456, 2012 WL 2054872, at *14 (M.D. Fla. June 7, 2012) ("Absent unusual circumstances, pregnancy is not considered a disability—temporary or otherwise—under the ADA or FCRA."); *Jeudy v. Holder*, No. 10-22873, 2011 WL 5361076, at *4 (S.D. Fla. Nov. 7, 2011) (noting "that pregnancy is not normally considered a disability"); *Gorman v Wells Mfg. Corp.*, 209 F. Supp. 2d 970, 975-76 (S.D. Iowa 2002) (noting that "a majority of federal courts hold that absent unusual circumstances, pregnancy-related medical conditions do not constitute a disability"); *Villarreal v. J.E. Merit Constructors, Inc.*, 895 F. Supp. 149, 152 (S.D. Tex. 1999) ("pregnancy and related medical conditions do not, absent unusual circumstances, constitute a 'physical impairment' under the ADA"); *Darian v. Univ. Mass. Boston*, 980 F. Supp. 77, 85 (D. Mass. 1997) ("pregnancy-related conditions are not disabilities under the ADA").

However, the ADA regulations that provide particularized guidance regarding pregnancy support a distinction between a healthy pregnancy and a pregnancy-related complication or

6

condition that may qualify as an impairment: "Other conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments. However, a pregnancy-related impairment that substantially limits a major life activity is a disability under the first prong of the definition." 29 C.F.R. Part 1630, App. § 1630.2(h).  Several courts have also acknowledged this distinction.  *See, e.g., Darian*, 980 F. Supp. at 85 ("By its terms, though pregnancy per se is not covered by the ADA, the Act does not necessarily exclude all pregnancy-related conditions and complications."); *Cerrato v. Durham*, 941 F. Supp. 388, 392 (S.D.N.Y. 1996) ("courts have distinguished between a normal, uncomplicated pregnancy itself and a complication or condition arising out of the pregnancy and have found that, under particular circumstances, the pregnancy-related condition can constitute a 'disability' within the meaning of the ADA"); *Hernandez*, 959 F. Supp. at 130 ("a distinction has been noted between pregnancy and complications caused by pregnancy"); *Romanelli v. W. & So. Life Ins. Co.*, No. 06-CV-819, 2007 WL 1231835, at *3 (M.D. Fla. Apr. 26, 2007) (denying a motion to dismiss where the plaintiff alleged disability discrimination in violation of the ADA regarding pregnancy-related complications). Thus, where a medical condition arises out of a pregnancy and causes an impairment separate from the symptoms associated with a healthy pregnancy, or significantly intensifies the symptoms associated with a healthy pregnancy, such medical condition may fall within the ADA's definition of a disability.

      Here, Mayorga has alleged sufficient facts to state a plausible claim for relief under the ADA for a pregnancy-related complication.  The Complaint alleges that Mayorga suffered from a physiological impairment—namely, that her baby was in a breech presentation and that she had significant pregnancy-related complications resulting in her three emergency room admissions and numerous pregnancy-related symptoms—and that Alorica's decision to terminate her employment was based on these impairments.  Such allegations, if proven as true, would provide Mayorga a cognizable claim under the ADA.  In light of the ADAAA's lenient standards to establish a disability, and the pleading standards of Rule 8, the Court finds that Mayorga has alleged sufficient facts to state a facially plausible claim of discrimination based on an actual disability under the ADA.

      Alorica contends that the Complaint is deficient on three grounds.  First, Alorica argues that the Complaint only alleges symptoms that are consistent with a normal pregnancy, which lasted only a short duration.  Therefore, according to Alorica, Mayorga could not have had a

disability under the ADA as a mater of law. *See Serednyj*, 656 F.3d at 554 (noting that "courts generally find that short-term, temporary restrictions, with little or no long-term impact, are not substantially limiting and do not render a person disabled for purposes of the ADA." quoting *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 1997)); *Gorman*, 209 F. Supp. 2d at 976 (noting that nausea, vomiting, and extreme fatigue are symptoms associated with a normal pregnancy). However, the determination of whether the nature, duration, and severity of these complications and symptoms qualify as a disability under the ADA is usually a question of fact that requires an individualized determination not properly made on a motion to dismiss. *See Cerrato v. Durham*, 941 F. Supp. 388, 393 (S.D.N.Y. 1996) (noting that "[w]hile . . . transitory and non-chronic impairment are not covered by the ADA . . . the extent and severity of the limitations plaintiff faces are factual questions not properly decided on a motion to dismiss."); *Garrett v. Chicago Sch. Reform Bd. of Trs.*, No. 95 C 7341, 1996 WL 411319, at *3 (N.D. Ill. July 19, 1996) (noting that "[t]he duration or severity of plaintiff's morning sickness cannot be determined from the present record. In any event, such factual determinations are not properly decided on a motion to dismiss."); *Patterson v. Xerox Corp.*, 901 F. Supp. 274, 278 (N.D. Ill. 1995) (noting that it was impossible to ascertain the duration of the plaintiff's condition on a motion to dismiss). While the Complaint alleges that Mayorga was on bed rest for only three weeks, the record is silent as to the nature, severity, and duration of Mayorga's complications or symptoms. "[T]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity. Impairments that last for only a short period of time are typically not covered, although they may be covered if sufficiently severe." 29 C.F.R. Part 1630, App. § 1630.2(j)(1)(ix) (quoting 154 Cong. Rec. 13,766 (2008) (Joint Statement of Reps. Hoyer and Sensenbrenner on the origins of the ADA Restoration Act of 2008, H.R. 3195)). It simply cannot be ascertained from the face of the Complaint that Mayorga's pregnancy-related complications or symptoms were not of a sufficient duration and magnitude to constitute a disability under the ADA.

Second, Alorica argues that the Complaint is deficient because it does not allege any major life activity that was substantially limited by Mayorga's impairment. The Complaint states that "Mayorga suffered medical conditions that substantially limited one or more major life activities . . . ." Compl., ¶ 32. Alorica contends that the Complaint must identify specific life activities that were substantially limited by Mayorga's impairment. Rule 8 requires that a

plaintiff articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The requirement of establishing a *prima facie* case is an evidentiary standard and not a pleading standard. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). The Supreme Court has held that the Federal Rules of Civil Procedure do not contain a heightened pleading requirement for employment discrimination suits. *Id.* at 514.

Moreover, the EEOC has stated that "[t]he determination of whether an impairment substantially limits a major life activity requires an individualized assessment." 29 C.F.R. § 1630.2(j)(1)(iv); *see also Garrett v. Univ. Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1311 (11th Cir. 2007) ("Each claim of disability must be considered on a case-by-case basis. When the symptoms of an impairment vary widely from person to person, an individualized assessment of the effect of an impairment is particularly necessary."). As noted above, the "substantially limits" and "major life activity" requirements do not impose demanding standards, and are to be construed broadly in favor of coverage. *See* 29 C.F.R. §§ 1630.2(i)(2), 1630.2(j)(1)(i). Examples of major life activities include caring for oneself, performing manual tasks, standing, sitting, reaching, lifting, bending, concentrating, thinking, etc. *See id.* § 1630.2(i)(1)(i). Here, Mayorga has alleged sufficient factual content to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Alorica has received fair notice of the claim and the ground upon which it rests. *Erickson*, 551 U.S. at 93. The Complaint describes the events leading to Mayorga's termination and describes the basis of her alleged disability. While it appears that Mayorga has set forth facts which indicate that she may have suffered an impairment to a major life activity, she does not identify that activity. She should do so in order for Alorica to have a fair understanding of her alleged impairment. Therefore, Mayorga is given leave to file an amended complaint to allege specific activities that were substantially limited by her impairment.

Third, Alorica argues that the Complaint must identify the specific complications that resulted in Mayorga's hospitalization. However, as noted above, the Federal Rules do not impose a heightened pleading standard for employment discrimination suits, and Mayorga is only required to plead enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570; *Swierkiewicz*, 534 U.S. at 514. While it appears that Mayorga has set forth facts which indicate that she suffered from severe pregnancy-related complications, she does not identify the complications that led to her emergency room admissions and physical

symptoms. She should do so in order for Alorica to have a fair understanding of her alleged impairment. Therefore, Mayorga is given leave to file an amended complaint to allege specific complications that led to her emergency room admissions and physical symptoms.

2. *Perceived Disability*

Mayorga also alleges that she meets the third alternative of the ADA's definition of a disability—that Alorica "regarded her" as having a disability. 42 U.S.C. § 12102(1)(C); 29 C.F.R. § 1630.2(g)(1)(iii). An individual can satisfy the "regarded as" definition if she can establish that she "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). The relevant inquiry here is not about Mayorga's actual condition, but rather how Alorica "perceived [her] condition, including the reactions and perceptions of the persons interacting or working with [her]." *Davis v. Vt. Dep't of Corr.*, No. 11-CV-164, 2012 WL 1269123, at *7 (D. Vt. Apr. 16, 2012) (internal citations omitted).

The ADAAA specifies, however, that the "regarded as" definition of disability does not apply to "impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B); *see also* 29 C.F.R. § 1630.15(f) ("It may be a defense to a charge of discrimination by an individual claiming coverage under the 'regarded as' prong of the definition of disability that the impairment is . . . or would be . . . 'transitory and minor.'"). To establish this defense, Alorica must demonstrate that the impairment is both "transitory" and "minor." 29 C.F.R. § 1630.15(f). An impairment is transitory if it has "an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B); 29 C.F.R. § 1630.15(f). The regulations, however, do not define minor. To the extent that this defense is apparent from the face of the Complaint, it is an appropriate basis for dismissing the claim that Alorica regarded Mayorga as having a disability. *Vt. Dep't of Corr.*, 2012 WL 1269123, at * 7; *Dube v. Tex. Health and Human Servs. Comm'n*, No. SA-11-CV-354, 2011 WL 3902762, at *5 (W.D. Tex. Sept. 6, 2011).

Alorica argues that Mayorga's "regarded as" claim must fail because it is evident from the face of the Complaint that her ailment was transitory and minor. Alorica specifically points to the allegation that Mayorga was on bed rest for three weeks and, as such, her "regarded as" claim must fail because it was less than the six month ADA definition. Mayorga responds that

10

there is no concession that "Plaintiff [sic] perceived impairment was for six months or less." Resp., ¶ 8. However, the Complaint only alleges that Mayorga became pregnant in January 2011, it does not identify the approximate dates that Mayorga learned of her pregnancy or first informed Alorica of her pregnancy. *See* Compl., ¶¶ 10-11. Moreover, the Complaint does not identify when Mayorga ceased to have complications regarding her pregnancy. The Complaint only alleges that in April 2011, Mayorga informed her supervisor that she needed to undergo testing at weeks 14 and 18 of her pregnancy, and that she returned from her three-week absence on June 27, 2011. *See id*. ¶¶ 12, 19. Thus, all of the facts in the Complaint, as it currently reads, suggest that Mayorga's impairment lasted less than six months. Mayorga is given leave to file an amended complaint to show that her impairment was not transitory.

Alorica also argues that Mayorga's impairment was "minor" because all of the symptoms that she alleges in the Complaint are "part and parcel" of a normal pregnancy. The ADA does not define "minor." However, as discussed above, whether the nature, duration, and severity of these symptoms are sufficient to constitute a disability under the ADA are questions of fact that require individualized determination.[2] *See Chicago Sch. Reform Bd.*, 1996 WL 411319, at *3; *Cerrato*, 941 F. Supp. at 393; *Patterson*, 901 F. Supp. at 278; *Garrett*, 507 F.3d at 1311. Here, whether Mayorga's impairment was "minor" presents a similar question of fact that is not properly resolved on a motion to dismiss. It cannot be determined from the face of the

---

[2] It is noteworthy that the majority of cases Alorica cites in arguing that Mayorga's impairment was minor were decisions on summary judgment motions that were based on evidence in the record. *See, e.g., White v. Interstate Dist. Co.*, 438 F. App'x 417 (6th Cir. 2011); *Lewis v. Fla. Default Law. Grp., P.L.*, No. 10-CV-1182, 2011 WL 4527456 (M.D. Fla. Sept. 16, 2011); *Selkow*, 2012 WL 2054872; *Jeudy*, 2011 WL 5361076. Only in *Dugay II v. Complete Skycap Servs., Inc.*, No. CV-10-2404, 2011 WL 3159171 (D. Ariz. July 26, 2011) did the court consider whether the plaintiff's impairment was transitory and minor on a motion to dismiss. However, *Dugay II* is distinguishable from the instant case.

In *Dugay II*, the plaintiff, who suffered injuries in an automobile accident, alleged that his employer regarded him as disabled and discriminated against him on that basis in violation of ADA. The court dismissed the plaintiff's claims on the basis that the actual duration of the plaintiff's alleged disability was three months. *Id*. at *4. However, the court did not reach the issue of whether the plaintiff's injuries were "minor." *See* 29 C.F.R. § 1630.15(f) ("To establish this defense, a covered entity must demonstrate that the impairment is both 'transitory' and 'minor.'"). Here, it is not evident from the face of the Complaint that Mayorga's complications were "minor" within the meaning of the ADA's "regarded as" definition of a disability. *See* 42 U.S.C. § 12102(1)(C); 29 C.F.R. § 1630.2(g)(1)(iii).

Complaint, nor the record as it currently stands, whether Mayorga's impairment was minor. Accordingly, the Motion to Dismiss Count II's "regarded as" claim must also be denied.

### B. Handicap Discrimination and Failure to Accommodate under the FCRA

In Count III, Mayorga asserts that Alorica discriminated against her based on her pregnancy-related complications in violation of the FCRA. The general purpose of the FCRA is to "to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status . . . ." Fla. Stat. § 760.01(2). Toward that end, the Florida legislature has deemed it unlawful to "discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." *Id.* § 760.10(1)(a). "Because the FCRA is patterned after Title VII, courts generally apply Title VII case law to discrimination claims brought under the FCRA." *Smith v. Naples Cmty. Hosp., Inc.*, 433 F. App'x 797, 799 (11th Cir. 2011) (citing *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004)); *accord Jones v. United Space Alliance, LLC*, 494 F.3d 1306, 1310 (11th Cir. 2007); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Florida courts have also construed the FCRA in conformity with the ADA because the FCRA also protects employees from discrimination based on disability. *Jones v. Fla. Power & Light Co.*, No. 09-22683, 2010 WL 1740713, at *2 (S.D. Fla. Apr. 29, 2010) (citing *Wimberly v. Sec. Tech. Grp.*, Inc., 866 So. 2d 146, 147 (Fla. 4th DCA 2004)); *see also Tourville v. Securex, Inc.*, 769 So. 2d 491, 492 n.1 (Fla. 4th DCA 2000); *McCaw Cellular Commc'n of Fla., Inc. v. Kwiatek*, 763 So. 2d 1063, 1065 (Fla. 4th DCA 1999).

Alorica argues that Count III should be dismissed because there is no recognized cause of action for pregnancy discrimination under the FCRA. Both the Florida state and federal courts are divided as to whether the FCRA provides a cause of action for pregnancy discrimination.[3]

---

[3] The Florida Supreme Court has not resolved the issue of whether the FCRA covers pregnancy discrimination. *See DuChateau v. Camp Dresser & McKee, Inc.*, 822 F. Supp. 2d 1325, 1333 (S.D. Fla. 2011); *Wahl v. Seacoast Banking Corp. of Fla.*, No. 09-81382, 2011 WL 861129, at *12 (S.D. Fla. Mar. 9, 2011). Moreover, Florida intermediate courts have reached opposite conclusions as to whether the FCRA provides a cause of action for pregnancy discrimination. *Compare O'Loughin v. Pinchback*, 579 So. 2d 788, 791-92 (Fla. 1st DCA 1991) (holding that the

Mayorga argues, however, that the Court does not need to address this issue because Count III alleges disability discrimination, rather than pregnancy discrimination, in violation of the FCRA. Thus, the salient inquiry here is whether pregnancy-related complications are "handicaps," and therefore actionable, under the FCRA. As Florida courts similarly construe the FCRA and the ADA, the Court turns to ADA case law.

As noted above, pregnancy, absent unusual circumstances, is not considered a disability under the ADA. However, the ADA regulations and several courts have distinguished between symptoms associated with a normal, healthy pregnancy and pregnancy-related complications or conditions. Where a medical condition arises out of a pregnancy and causes an impairment beyond the symptoms associated with a healthy pregnancy, or significantly intensifies those symptoms, such medical condition may constitute a disability within the definition of the ADA, and therefore also under the FCRA. *See Romanelli*, 2007 WL 1231835, at *3 (denying a motion to dismiss where the plaintiff alleged disability discrimination on the basis of pregnancy-related complications in violation of the ADA and FCRA). Here, Mayorga's allegations are sufficient to state a claim for handicap discrimination based on a pregnancy-related complication or condition under the FCRA. Whether the nature and severity of the impairment constitutes a handicap is a question of fact that is not appropriately resolved on a motion to dismiss. Accordingly, Alorica's Motion to Dismiss is denied as to Count III.

Alorica cites to *Walsh v. Food Supply Co. (Walsh I)*, No. 96-677, 1997 WL 401594 (M.D. Fla. Mar. 19, 1997) and *Whiteman v. Cingular Wireless, LLC*, No. 04-80389 (S.D. Fla. May 3, 2006), *aff'd* 273 F. App'x 841 (11th Cir. 2008) to argue that the FCRA does not apply to

---

Florida Human Rights Act (as the FCRA was then titled) did not protect against pregnancy discrimination), *with Carsillo v. City of Lake Worth*, 995 So. 2d 1118 (Fla. 4th DCA 2008) (holding that the FCRA does cover discrimination based on pregnancy). Indeed, federal courts are also not in accordance on this issue. *Compare, e.g., DuChateau*, 822 F. Supp. 2d at 1336 (holding that the FCRA does not provide a claim for pregnancy discrimination), *Berrios v. Univ. of Miami*, No. 11-22586, at *6 (S.D. Fla. Mar. 1, 2012) (same), *Boone*, 565 F. Supp. 2d at 1326-27 (same), *Fernandez v. Copperleaf Gold Club Cmty. Ass'n, Inc.*, No. 05-CV-286, 2005 WL 2277591, at *1 (M.D. Fla. Sept. 15, 2005), *Frazier v. T-Mobile USA, Inc.*, 495 F. Supp. 2d 1185, 1187 (M.D. Fla. 2003) (same), and *Swiney v. Lazy Days R.V. Ctr., Inc.*, No. 00-CV-1356, 2000 WL 1392101, at *1 (M.D. Fla. Aug. 1, 2000) (same), *with Constable v. Agilysis, Inc*., No. 10-CV-01778, 2011 WL 2446605, at *6 (M.D. Fla. June 15, 2011) (concluding that the FCRA does provide a cause of action for pregnancy discrimination), *Terry v. Real Talent, Inc.*, 09-CV-1756, 2009 WL 3494476, at *2 (M.D. Fla. Oct. 27, 2009) (same), and *Brewer v. LCM Med., Inc.*, No. 05-61741, at *4-*5 (S.D. Fla. May 26, 2006).

disability discrimination under the FCRA.  In *Walsh I*, the plaintiff alleged she was terminated from her employment because of her pregnancy, which the court noted was "a very difficult, problematic, and potentially dangerous pregnancy," in violation of, *inter alia*, the ADA and FCRA.  *Walsh v. Food Supply Co. (Walsh II)*, No. 96-677, 1997 WL 714915, at *1-*3 (M.D. Fla. Oct. 14, 1997).[4]  In granting the defendant's motion to dismiss, the court noted that the plaintiff argued that "her pregnancy . . . is considered a handicap under the FCRA of 1992." *Walsh I*, 1997 WL 401594, at *2.  The court rejected this argument, holding that "pregnancy is not a 'handicap' within the meaning of chapter 760.10(1)(a) of the FCRA for the same reasons it is not a disability under the ADA."  *Id*. (citing *Brand v. Fla. Power Corp.*, 633 So. 2d 504, 507-09 (Fla. 1st DCA 1994)).

   The instant case is notably distinguishable from *Walsh I*.  Here, Mayorga is not alleging that her pregnancy is a handicap *per se* within the meaning of the FCRA.  Rather, she argues that her pregnancy-related complications constitute a handicap.  The court in *Walsh I* did not address the issue of whether pregnancy-related complications may give rise to a cognizable claim under the FCRA or the ADA.  *Walsh I*, therefore, is not inconsistent with this Court's holding that a pregnancy-related medical condition that causes an impairment beyond the symptoms associated with a healthy pregnancy may constitute a handicap under the FCRA.

   *Whiteman v. Cingular Wireless*, also relied on by Alorica, is similarly distinguishable from the instant case.  There, the plaintiff alleged that she was terminated on the basis of her pregnancy, which was also considered high-risk, in violation of Title VII and the FCRA. *Whiteman*, No. 04-80389, at *5, *9.  Specifically, the plaintiff argued that she was singled-out for termination by the company during a corporate reorganization that resulted in a reduction of force.  *Id*. at *7, *9.  The court held that the FCRA does not recognize a cause of action for pregnancy discrimination, and that the plaintiff failed to establish a *prima facie* case of discrimination under Title VII, and accordingly granted summary judgment in favor of the defendant.[5]  *Id*. at *11, *17.

---

[4] The court in *Walsh I* withheld a recitation of the relevant facts as it address only questions of law in its order.  The factual predicate for *Walsh I* was, however, set forth by the court in *Walsh II*.

[5] On appeal, the Eleventh Circuit considered, *inter alia*, whether "pregnancy is a protected characteristic under the FCRA."  *Whiteman v. Cingular Wireless LLC*, 273 F. App'x 841, 841 (11th Cir. 2008).  In a two-paragraph *per curiam* opinion, held that the district court properly

Like the court in *Walsh I*, the court in *Whiteman* did not address the issue of whether a pregnancy-related complication may qualify as a disability under the ADA or the FCRA. Rather, the plaintiff in *Whiteman* only alleged claims for pregnancy discrimination under Title VII and the FCRA. As noted above, pregnancy, absent unusual circumstances, is not considered a disability or a handicap. However, Mayorga alleges that her pregnancy-related complications are a disability and handicap under the ADA and the FCRA respectively. Whether these complications are of such severity and nature as to entitle Mayorga to relief under the ADA or FCRA are factual questions and are not properly resolved on a motion to dismiss. Accordingly, Alorica's Motion to Dismiss is denied as to Count III.

## IV.   CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that Defendant's Motion to Dismiss (D.E. # 24) is GRANTED IN PART and DENIED IN PART as indicated above. Plaintiff is granted leave to file an amended complaint by August 9, 2012.

DONE AND ORDERED, in Chambers, Miami, Florida, July 25, 2012.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of record

---

applied the law to the facts of the case and affirmed the district court's holdings. *Id*. The Eleventh Circuit did not reach the issue of whether pregnancy-related complications are legally cognizable under the ADA or FCRA.