UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:12-CV-21578-PCH

SILVIA CURTIS MAYORGA,

    Plaintiff,

vs.

ALORICA, INC., d/b/a P.R.C., LLC.
a/k/a PRECISION RESPONSE CORP.

    Defendant.
_____/

## AMENDED COMPLAINT

    Plaintiff, Silvia Curtis Mayorga ("Mayorga"), by and through her undersigned counsel, hereby sues Defendant, Alorica, Inc., doing business as P.R.C., LLC, also known as Precision Response Corporation ("Alorica" or "PRC") and alleges as follows:

**Parties, Jurisdiction and Venue**

    1.    This is an action for damages to address the discrimination committed by Alorica against Mayorga in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1979 ("Title VII"), Title I of the Americans with Disabilities Act of 1990 ("ADA") and the Florida Civil Rights Act of 1992 ("FCRA").

    2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

    3.    Mayorga is a female United States resident of Miami-Dade County, Florida. Mayorga is an "employee" within the meaning of Title VII, the ADA and the FCRA.

CASE NO.: 1:12-CV-21578-PCH

4. Alorica is a California corporation with its principal place of business in San Bernardino County, California. At all times relevant to this claim, Alorica maintained an office (PRC) and engaged in business in Miami-Dade County, Florida. Alorica is an "employer" within the meaning of Title VII, the ADA and the FCRA.

5. Venue is proper in the United States District Court for the Southern District of Florida, Miami-Dade Division, pursuant to 42 U.S.C. § 2000e-5(f)(3).

6. All conditions precedent to this claim have been performed, satisfied or waived. Mayorga's EEOC Notice of Right to Sue Letter is attached as Ex. A.

7. Mayorga has been required to hire counsel and has agreed to pay them costs and attorneys' fees for their services in this matter.

**Facts Giving Rise to Relief**

Mayorga's High-Risk Pregnancy

8. PRC is an outsourced business solutions provider that delivers customer management, sales and technical support services on behalf of its clients. Mayorga began her employment with PRC in 2010 as a Customer Service Representative in the DirectTV bilingual retention and cancellation department of PRC's Miami-Dade County, Florida, call center.

9. PRC employed over 100 other Customer Service Representatives in the DirectTV bilingual retention and cancellation department, including over 50 others performing the same duties as Mayorga during her assigned shifts.

10. In January 2011, Mayorga became pregnant. Mayorga had already suffered four prior miscarriages, including a miscarriage in September 2010 of which her PRC co-workers and supervisors were aware. Mayorga's obstetrician determined that her pregnancy was high-risk and ordered that her pregnancy be closely monitored.

11. Mayorga informed her direct supervisor, Luis Sola ("Sola"), of her high-risk pregnancy on or about January 2011. She also provided him and Alorica human resources representatives, Maria Agurto-Valdes ("Agurto-Valdes") and Margarita (last name unknown), with copies of her doctor's orders.

## Mayorga's Requests for Accommodation

12. In April 2011, Mayorga informed Sola that she needed to undergo ultrasounds and other testing at 14 weeks and 18 weeks of her pregnancy. Mayorga explained that the doctors could perform the tests on Thursdays only. Mayorga requested the relevant two Thursdays off from work and advised that she was available to work on one or more of her off days to make up for the missed time. She also offered to swap shifts with one of the other 100 plus Customer Service Representatives in the DirectTV bilingual retention and cancellation department. Mayorga even offered to take on the task of finding a co-worker who would be willing and able to swap shifts with her.

13. Sola denied Mayorga's requests for an accommodation and made inappropriate comments about Mayorga's pregnancy. He told Mayorga that she was pregnant—not special. Regarding necessary Down syndrome testing, he asked Mayorga, "What's the big deal? Why do you have to test your kid to find out if it's normal? Is it not normal?" He denied Mayorga's offer to work on one or more of her off days to make up for the missed time. He also denied Mayorga's offer to find someone with whom she could swap shifts.

14. Thereafter, Mayorga requested the days off from Agurto-Valdes in the human resources department. Agurto-Valdes reluctantly approved the two Thursdays off and Mayorga's doctors were able to perform the required tests.

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900, Miami, FL 33131   Phone: 305.377.0700   Fax: 305.377.3001   www.cspalaw.com

15. The tests revealed that Mayorga's baby was, and would be, breeched throughout the entire pregnancy. Throughout her pregnancy, Mayorga suffered from premature uterine contractions, irritation of the uterus, increased heart rate, severe morning sickness, severe pelvic bone pains, severe back pain, severe lower abdominal pain, extreme headaches and other pregnancy-related conditions. Despite these ailments, she was able to perform her job duties for PRC.

16. Mayorga suffered severe pregnancy-related complications during her entire pregnancy. Mayorga was admitted to the emergency room at the hospital three separate times due to severe pregnancy-related complications, including, but not limited to, rhesus isoimmunization, hyperemesis gravidarum, antepartum haemorrhage, cystitis, epigastric abdominal pain, abnormality of shape/position of gravid uterys/neighboring structures, threatened abortion, threatened ectopic pregnancy, painful respiration, pre-term uterine contractions, pelvic pain, abnormal vaginal bleeding, genitourinary tract infections, urinary tract infections and bladder infections.

17. These pregnancy-related complications substantially limited several major life activities, including, but not limited to, Mayorga's ability to reproduce, work, stand, lift, bend, participate in strenuous activities and have sexual contact with her spouse. As a result, her obstetrician ordered that Mayorga be placed on bed rest for three weeks.

18. Mayorga informed Sola of her doctor's orders and requested an accommodation of three weeks of unpaid leave. Sola denied Mayorga's request, and again made inappropriate comments about Mayorga's pregnancy. He told Mayorga, "I am not going to treat you special because you are pregnant."

19. Mayorga went to Agurto-Valdes in human resources and requested an accommodation of three weeks of unpaid leave. Agurto-Valdes approved Mayorga's request for three weeks of unpaid leave, explaining that, under PRC's policies, Mayorga could take up to 12 weeks of unpaid leave.

PRC's Termination of Mayorga's Employment

20. Mayorga returned to work from her approved three-week leave of absence on Monday, June 27, 2011. Upon her arrival, Agurto-Valdes advised Mayorga that she had been terminated. Specifically, Agurto-Valdes said, "Sorry. I cannot accommodate you. This is a company. We need you here. So, since you can't be here because you are pregnant, we cannot accommodate you. Re-apply after you have your baby."

21. PRC treated Mayorga less favorably than similarly-situated employees outside of her protected classes.

22. Indeed, PRC violated its own attendance, scheduling and leave of absence policies in terminating Mayorga's employment after she returned from an approved leave of absence.

23. PRC discriminated against Mayorga on the basis of sex/pregnancy and disability/handicap, and being perceived as having a disability/handicap. Mayorga would not have been terminated but for these unlawful reasons.

**COUNT I**
**Title VII – Sex and Pregnancy Discrimination**

24. Mayorga re-alleges paragraphs 1 through 23 as if fully set forth herein.

25. PRC's managers' blatant remarks, whose intent could be nothing other than to discriminate against Mayorga on the basis of her sex and pregnancy, constitute direct evidence of discrimination.

CLARKE SILVERGLATE, P.A.
799 Brickell Plaza, Suite 900, Miami, FL 33131   Phone: 305.377.0700   Fax: 305.377.3001   www.cspalaw.com

26. Alternatively, PRC treated Mayorga less favorably than similarly-situated employees outside of her protected classes (female/pregnant), in violation of Title VII.

27. Mayorga's sex and pregnancy was a motivating factor in PRC's decision to terminate her employment. Mayorga would not have been terminated but for her sex and condition of pregnancy.

28. PRC acted with a reckless disregard for Mayorga's rights under federal law.

29. As a direct and proximate consequence of PRC's unlawful and discriminatory employment practices, Mayorga suffered and continues to suffer loss of earnings and benefits, emotional pain, suffering, embarrassment, humiliation, loss of enjoyment of life and inconvenience.

WHEREFORE, Mayorga demands a jury trial on all issues and respectfully asks the Court to enter a money judgment against PRC representing compensatory damages, lost wages, past and future wages, lost benefits, mental anguish, emotional distress and punitive damages, together with pre-judgment interest, costs, and reasonable attorneys' fees.

## COUNT II
## ADA – Disability/Perceived Disability Discrimination and Failure to Accommodate

30. Mayorga re-alleges paragraphs 1 through 23 as if fully set forth herein.

31. PRC's managers' blatant remarks, whose intent could be nothing other than to discriminate against Mayorga on the basis of her disability or perceived disability, constitute direct evidence of discrimination.

32. Alternatively, Mayorga's medical conditions and severe complications resulting from her pregnancy constitute a disability under the ADA.

33. At all times material to this Complaint, Mayorga suffered medical conditions, including, but not limited to rhesus isoimmunization, hyperemesis gravidarum, antepartum

haemorrhage, cystitis, epigastric abdominal pain, abnormality of shape/position of gravid uterys/neighboring structures, threatened abortion, threatened ectopic pregnancy, painful respiration, pre-term uterine contractions, pelvic pain, abnormal vaginal bleeding, genitourinary tract infection, urinary tract infection, bladder infection.  These medical conditions substantially limited major life activities, including, but not limited to, Mayorga's ability to reproduce, work, stand, lift, bend, participate in strenuous activities and have sexual contact with her spouse. PRC regarded Mayorga as having such disabilities as early as September 2010 after learning of Mayorga's prior miscarriage.

34. PRC's decision to terminate Mayorga was based on her disability and PRC's perception that Mayorga suffered from such disability.

35. PRC would not have terminated Mayorga's employment but for this unlawful motivation.

36. Moreover, PRC unlawfully failed to accommodate Mayorga although doing so would not have posed an undue burden on the company.

37. Approving Mayorga's request for an unpaid leave of absence and allowing her to return to work would have been an appropriate accommodation as Mayorga expected to return to work, and did in fact return to work, after three weeks of doctor-ordered bed rest and treatment for her high-risk pregnancy.

38. PRC discriminated against Mayorga with a reckless disregard for Mayorga's rights and, as a result, Mayorga has suffered damages.

CASE NO.: 1:12-CV-21578-PCH

WHEREFORE, Mayorga demands a jury trial on all issues and respectfully asks the Court to enter a money judgment against PRC representing compensatory damages, lost wages, past and future wages, lost benefits, mental anguish, emotional distress and punitive damages, together with pre-judgment interest, costs, and reasonable attorneys' fees.

## COUNT III
### FCRA – Handicap Discrimination and Failure to Accommodate

39. Mayorga re-alleges paragraphs 1 through 23 as if fully set forth herein.

40. PRC's managers' blatant remarks, whose intent could be nothing other than to discriminate against Mayorga on the basis of her disability or perceived disability, constitute direct evidence of discrimination.

41. Alternatively, at all times material to this Complaint, Mayorga suffered medical conditions, including, but not limited to rhesus isoimmunization, hyperemesis gravidarum, antepartum haemorrhage, cystitis, epigastric abdominal pain, abnormality of shape/position of gravid uterys/neighboring structures, threatened abortion, threatened ectopic pregnancy, painful respiration, pre-term uterine contractions, pelvic pain, abnormal vaginal bleeding, genitourinary tract infection, urinary tract infection, bladder infection.  These medical conditions substantially limited major life activities, including, but not limited to, Mayorga's ability to reproduce, work, stand, lift, bend, participate in strenuous activities and have sexual contact with her spouse. PRC regarded Mayorga as having such disabilities as early as September 2010 after learning of Mayorga's prior miscarriage.

42. PRC's decision to terminate Mayorga was based on her handicap and PRC's perception that Mayorga suffered from such handicap.

43. PRC would not have terminated Mayorga's employment but for this unlawful motivation.

44. Moreover, PRC unlawfully failed to accommodate Mayorga although doing so would not have posed an undue burden on the company.

45. Approving Mayorga's request for an unpaid leave of absence and allowing her to return to work would have been an appropriate accommodation as Mayorga expected to return to work, and did in fact return to work, after three weeks of doctor-ordered bed rest and treatment for her high-risk pregnancy.

46. PRC discriminated against Mayorga with a reckless disregard for Mayorga's rights and, as a result, Mayorga has suffered damages.

WHEREFORE, Mayorga demands a jury trial on all issues and respectfully asks the Court to enter a money judgment against PRC representing compensatory damages, lost wages, past and future wages, lost benefits, mental anguish, emotional distress and punitive damages, together with pre-judgment interest, costs, and reasonable attorneys' fees.

DATED this 6th day of August, 2012.

>
> CLARKE SILVERGLATE, P.A.
> *Counsel for Plaintiff,*
> *Silvia Curtis Mayorga*
> 799 Brickell Plaza, Suite 900
> Miami, Florida 33131
> Telephone:   (305) 377-0700
> Facsimile:    (305) 377-7001
>
>
> By:   s/Oshia Gainer Banks
>        Craig Salner
>        Florida Bar No.: 669695
>        Oshia Gainer Banks
>        Florida Bar No.: 037022

CASE NO.: 1:12-CV-21578-PCH

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on <u>August 6, 2012</u>, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

| | |
|---|---|
| Arnold R. Gellman, Esq.<br>Florida Bar No. 111313<br>agellman@ebglaw.com<br>4090 Laguna Street, 2nd Floor<br>Coral Gables, Florida 33146<br>Tel: (305) 774-1700<br>Fax: (305) 774-1705<br>*Counsel for Defendant*<br>(CM/ECF Notices of Electronic Filing and E-mail) | Clara H. Rho, Esq.<br>Admitted *Pro Hac Vice*<br>crho@gebglaw.corn<br>Patrick G. Brady, Esq.<br>Admitted *Pro Hac Vice*<br>pbrady@ebglaw.com<br>EPSTEIN BECKER & GREEN, P.C.<br>One Gateway Center<br>Newark, New Jersey 01702<br>Tel: (973) 642-1900<br>Fax: (973) 642-0099<br>*Counsel for Defendant*<br>(CM/ECF Notices of Electronic Filing and E-mail) |

By: <u>   s/Oshia Gainer Banks         </u>
       Oshia Gainer Banks

362640